### LABEDZ v. KRAMER et al.

District Court, D. Oregon.

Jan. 7, 18, 1944.

26

B. G. Skulason, of Portland, Or., for plaintiff.

Carl C. Donaugh, U. S. Atty., and William H. Hedlund, Asst. U. S. Atty., both of Portland, Or., for defendants.

McCOLLOCH, District Judge. (Oral opinion from the bench January 7, 1944, and January 18, 1944.)

What you ask for and what is asked for in all of these cases is that the enforcement of a criminal law shall be restrained.

█ The only coercive thing behind these exclusion orders is the threat of criminal prosecution.[1] Of course we all know that this legislation and these orders were thought out by somebody, and properly so, in advance of the military crisis that now confronts the country. Somebody between the last war and this war conceived the framework that would be set up of executive action, or congressional action if Congress was disposed to act in the event of war. Somebody between the last war and this war said: "Now in military areas where less than actual invasion has occurred we will set up this process of exclusion, after hearing and by order, but we will leave the penalties to the civil courts."

I don't take seriously what has been said here this morning about some civilian employee talking of expelling this man forcibly. I am dealing with the Act, 18 U.S.C.A. § 97a, March 21, 1942, c. 191, 56 Stat. 173, as it is drawn and the possibility, if this man does not comply with the order, that the United States Attorney will file an information charging him criminally in this Court, which then will call for the empaneling of a jury and a trial, and in the event he were found guilty would call for the imposition of penalty. The maximum provided by the statute is $5,000 and one year's imprisonment. It is not a felony. That wasn't accidental. Somebody in conceiving this method of dealing with suspects in military areas must have concluded, after thought, that the offense should not be ranked higher than a misdemeanor. It all shows not only great intelligence, it seems to me, but great toleration in thinking of the civil rights that were involved.

█ So I come back to what I said a minute ago. Essentially what you seem to be asking of me is that enforcement of a criminal law shall be restrained. That, as we know, is only done by the Courts in exceptional cases.

You might ask me: "Do you mean to say that this man can't ever raise the question of his civil constitutional rights?" If he were prosecuted criminally, I would be inclined to say that he could raise his question of civil rights in the criminal case, and, I want to add, in view of the recent decision of the Supreme Court in Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, that (following the logic of that decision) the citizen should not be allowed to raise the question early. I take it that the decision in the Falbo case was based on good administration. In dealing with wartime problems, which involve the executive as well as the judicial attitude, we are dealing with questions of broad public interest, questions of broad public policy.

Certainly a man is entitled at some time to raise questions affecting his civil constitutional rights. Justice Douglas, in his concurring opinion in Kiyoshi Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774, made that plain.

█ United States v. Falbo[2] holds that a draft registrant cannot raise civil constitutional questions until the last step in the enforcement of the Selective Training and Service Act, 50 U.S.C.A.Appendix, § 301 et seq., has been carried out. If that policy is necessary in the public interest in the enforcement of the Draft Act, it seems to me there is a great deal of logic in saying in the kind of a case now before us that the executive should not be interfered with until a rather late step

---

[1] Alexander v. De Witt et al., 9 Cir., 141 F.2d 573.

[2] See Yakus v. United States, 64 S.Ct. 660.

in the proceeding. ˙ Now, I grant that may seem harsh to the citizen, but no harsher than in the draft cases. It seems to me that until one of these petitioners has been informed against or indicted and put to his trial, he can't raise these questions that are sought to be raised at this time.

In that connection we must never forget what a great part the jury system plays in Anglo-Saxon jurisprudence, especially on the criminal side, and it does seem to me that there has been a great deal of statesmanship employed in setting up the machinery just in the way it has been set up for dealing with these problems in military areas. It seems to me that the military have shown a great deal of restraint in providing that the penalty, and the sole penalty, for a violation of their conclusions and orders based thereon, should be left to the civil courts and a jury.

I want to refer again to the Falbo case, wherein the Supreme Court held that the registrant might not question his draft board's action at any intermediate stage. The Court does not say just when or how he may raise the question. The draft law, like the law we were considering, provides for criminal prosecution and punishment of a registrant for any knowing disregard or violation of a draft board order, and there have been a large number of indictments returned and criminal prosecutions for violations of the Draft Act. Now the Supreme Court says that in all of those cases which arise through disregard of some intermediate order, some order before final induction, the defendant may offer no defense.

In my opinion, the logic of the Falbo decision applies to the present case—if in the draft cases it is not in the national interest to permit any challenge of the draft board's action until the last step towards induction, it seems to me by the same logic that an equity judge should not inquire into the validity of the military's action in excluding people from areas of sensitivity whose presence the military thinks is inimical to national security.

In the later stages, if one excluded felt he was being mistreated to the extent that his constitutional rights were invaded, he could raise the question, it would seem, after indictment, but not before—here we get, it seems to me, a perfect parallel to the draft cases—it might even be said that the defendant should first submit to the order of exclusion, but I need not decide that now.

All I need to decide now—and I think I am following the spirit and that I am bound by the analogy of the Falbo case— is that this petitioner cannot on the record here attack the validity of the order of exclusion at this time and in this manner, but I will go further and I will make a finding, if the Government wishes to submit it to me,—and think that it would be good judicial practice to do so, particularly if the case is sent to another court or courts, I will make a finding as prayed for by the Government that in this case the action of the military authorities was not arbitrary or capricious and that there were rational bases for their action.